IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOSEPH R. PHILLIPS-BEY, | ) |
| Plaintiff, | ) |
| v. | ) CIV-04-1116-M |
| CLIFFORD BARNARD, et al., | ) |
| Defendants. | ) |

SECOND SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, brings this civil rights action pursuant to 42 U.S.C. §1983. The Defendants named in the Complaint are Clifford Barnard, who is identified as a unit manager at the Lawton Correctional Facility ("LCF"), former LCF chief of security Ron Champion, and LCF property room supervisor Wayne Dornewass. The Defendants have moved to dismiss the cause of action or, alternatively, for summary judgment, to which Plaintiff has responded. Defendants have also caused the filing of a special report consistent with Martinez v. Aaron, 570 F.2d 317 (1978), as well as a supplemental special report. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B). For the following reasons, it is recommended that Defendants' motions to dismiss be granted and the cause of action be dismissed for failure to state a claim upon which relief may be granted and

for failure to exhaust available administrative remedies.

I. Procedural History

In ground one of the Complaint, Plaintiff alleges his equal protection and "14th Amendment" rights were violated by Defendant Barnard. As support for this claim, Plaintiff alleges that "Defendant Barnard did deny the Plaintiff the same right as Christian inmates, to fully practise [sic] their [sic] religion, under his constitutional right to practise [sic] Islam. Defendant also denied Plaintiff the right to receive exercises in accord to his constitutional right." Plaintiff alleges that these actions by Defendant Barnard occurred "on date 7/18/03 [when] Plaintiff arrived on Housing Unit 400" at LCF, and that he "was constant [sic] subject to haressment [sic] and discrimination measures orchestrated by defendant Clifford Barnard."

In ground two of the Complaint, Plaintiff alleges that his due process rights and eleventh amendment rights were violated when "defendant Barnard did deny Plaintiff the right to be heard by a commitee [sic] Board or the right to receive notification to prepare himself for Disciplinary Measures." Plaintiff also alleges that "Defendants Champion and Dornawass [sic] did deny the Plaintiff the same equality of policy, that governs the actions of Stolen Property that has been altered. These Defendants did not follow the policy that governs there [sic] actions, when dealing with Inmates of their facility." As factual support for this claim, Plaintiff alleges that on October 13, 2003, he ate breakfast and returned to his cell where he discovered his radio had been stolen out of his locker box. He alleges he sent an unidentified "Defendant" a request to staff form and received a response indicating the radio had been confiscated. He alleges he was later notified that the radio was not in the

property room, and he asserts that Defendant Dornewass, as the property room supervisor, and Defendant Champion denied Plaintiff his right to the return of the radio or to mail it to another destination.

In ground three, Plaintiff alleges a denial of his eighth amendment right not to be subjected to cruel and unusual punishment. Plaintiff contends that "Defendants Barnard and Champion did force Plaintiff on Housing Block 400 against his Will and without justification," that Defendants Barnard and Champion did not provide orientation "so he would know why he was being forced on this unit, and so he could have the opportunity to be heard."

With regard to the issue of exhaustion of administrative remedies, Plaintiff alleged in the Complaint that he had submitted "several" request to staff forms to each Defendant and then filed grievances but that his grievances were denied. As relief, Plaintiff seeks monetary damages.

In their initial Motion to Dismiss the cause of action, Defendants Barnard and Dornewass contended that Plaintiff had been incarcerated at LCF from July 15, 2003, through January 16, 2005, and that during this period of time Plaintiff had not filed any grievances with the facility concerning the issues raised in the Complaint. Defendants Barnard and Dornewass also moved to dismiss Plaintiff's cause of action for failure to state a claim for relief. Plaintiff responded to Defendants Barnard and Dornewass's Motion to Dismiss, asserting that he had exhausted all administrative remedies that were available to him with respect to his claims. Plaintiff attached to this responsive pleading several request

to staff and grievance forms that were inconsistent with the allegations made by Defendants Barnard and Dornewass in their Motion to Dismiss regarding the issue of Plaintiff's exhaustion of administrative remedies. Consequently, Defendants Barnard and Dornewass were directed to file a supplemental special report and to supplement their Motion to Dismiss, and Defendants Barnard and Dornewass have now caused the filing of a supplemental special report and a supplement to their Motion to Dismiss.

II. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Hall v. Bellmon, 935 F.2d 1106, 1109 (10th Cir. 1991). In reviewing the sufficiency of the complaint, the court presumes all of the plaintiff's factual allegations to be true and construes them in the light most favorable to the plaintiff. Id. A *pro se* plaintiff's complaint must be broadly construed under this standard. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the "broad reading" of *pro se* complaints dictated by Haines "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Hall, 935 F.2d at 1110. The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." Whitney v. New Mexico, 113 F.3d 1170, 1173-1174 (10th Cir. 1997).

In 1995, Congress passed and the President signed into law the Prison Litigation

Reform Act of 1995 ("PLRA"). One provision of the PLRA, codified at 42 U.S.C. §1997e(a), directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This provision has been interpreted by the Supreme Court to apply "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court regardless of the type of relief available under the institutional administrative procedure. Booth v. Churner, 532 U.S. 731, 741 (2001). Section 1997e(a) "imposes a pleading requirement on the prisoner," who must "(1) plead his claims with 'a short and plain statement .... showing that [he] is entitled to relief,' in compliance with Fed. R. Civ. P. 8(a)(2), and (2) 'attach[ ] a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome.'" Steele v. Federal Bureau of Prisons, 355 F.3d 1204, 1210 (10th Cir. 2003)(quoting Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000)). "In the absence of particularized averments concerning exhaustion showing the nature of the administrative proceeding and its outcome, the action must be dismissed under §1997e." Id. (quotation omitted). "Defendants with a colorable argument based on lack of exhaustion ... may raise it in a dispositive motion, to be addressed promptly by the court." Id. at 1212. Under these

circumstances, the "court may consider the attached administrative materials" provided by the Plaintiff, or if none are provided by the Plaintiff then the court may consider administrative materials or a declaration submitted by the Defendant. Id.  The "PLRA contains a total exhaustion requirement" and "the presence of unexhausted claims in [a] complaint" requires the dismissal of the complaint without prejudice. Ross v. County of Bernalillo, 365 F.3d 1181, 1189 (10th Cir. 2004).

III. Failure to State a Claim

In Plaintiff's first ground for relief asserted in the Complaint, he alleges, in part, a denial of his First Amendment right to freely exercise his chosen Islamic religion and that he was generally subjected to harassment and discrimination through unidentified acts or omissions by Defendant Barnard.  In Plaintiff's response to Defendants Barnard and Dornewass's Motion to Dismiss, Plaintiff alleges that he

> filed many complaints against Defendant Barnard for discriminating against Plaintiff.  Defendant continued to showing [sic] discrimination against Plaintiff on numerous occasions. Defendant verbally threaten and viciously harass the Plaintiff and denied him the same Equalty [sic] as other ethnic inmate groups of non-black nationality. Defendant Barnard place the Plaintiff on a restrictive unit as a means of harassment, because Plaintiff continued complaining about racial discrimination against him.  Defendant attempted harassing Plaintiff into provocation, by searching Plaintiff cell on several occasions.  When there was no contraband found, defendant placed the Plaintiff on Disciplinary Pod of the unit. Defendant did not provide Plaintiff with Restrictive Housing Order, informing Plaintiff reasons for being placed in Disciplinary Restrictive Housing Pod.  Defendant did not provide the Plaintiff with any type of documentation notifying Plaintiff of reasons for placing him on a restrictive housing pod, notifying

>  Plaintiff why he was being subject to different treatment as other inmates of the Unit Housing 400 Block. Defendants kept Plaintiff on Disciplinary [sic] Pod #C for the rest of his duration stay at LCF.

According to the documentary evidence presented by Plaintiff and Defendants, Plaintiff was incarcerated at LCF from July 15, 2003, until January 6, 2004, and he was transferred to LCF in protective custody status. Supplement to Special Report, Exs. 1, 3, 4, 5, 10. Plaintiff remained in the protective custody unit of LCF until his transfer to Oklahoma State Penitentiary in January 2004. Id., Ex. 11. Plaintiff received three misconducts during his brief period of incarceration at LCF. Id. Plaintiff's case manager at LCF and Plaintiff's LCF classification committee recommended in October 2003 that Plaintiff be transferred to a higher security level facility because he had become a management problem at LCF. Id., Exs. 2, 6; LCF Warden Miller also recommended in November 2003 that Plaintiff be transferred to a higher security level facility for the following reasons:

> [Plaintiff] was implicated of holding a home made knife in his cell. He was reassigned to 4C205 (PC Unit Segregation). On his placement to this cell, he declared a hunger strike. When [Plaintiff] does not get what he wants he refuses to eat. This incident makes twice that he has been placed in medical for refusing to eat. [Plaintiff] also has received a misconduct for masturbating in the presence of female staff. [Plaintiff] made comment to [correctional officer] that he was jealous and didn't want her surrounded by other inmates.

Id., Ex. 9; Plaintiff's Motion to Strike/Dismiss, Att. F. In further explanation for this requested classification change, Warden Miller stated that Plaintiff did not receive a misconduct for having a home-made knife in his cell because a cell search was conducted

and the knife could not be found.  However, Warden Miller stated that on September 12, 2003, Plaintiff received a misconduct for sexual activity. <u>Id.</u>  The population coordinator of the Oklahoma Department of Corrections ("DOC") agreed with Warden Miller's recommendation and effected Plaintiff's transfer to a maximum security level facility, Oklahoma State Penitentiary, on the basis that Plaintiff was a "threat to staff [and] population in particular female staff." <u>Id.</u>, Ex. E.  DOC's regional director also approved the classification change and transfer. Supplement to Special Report, Ex. 9.

The First Amendment mandates that prison authorities provide prisoners with reasonable opportunities to exercise their sincerely held religious beliefs. <u>O'Lone v. Estate of Shabazz</u>, 482 U.S. 342, 348 (1987).  "Inmates' free exercise rights are, however, subject to prison restrictions rationally related to legitimate penological interests." <u>Hammons v. Saffle</u>, 348 F.3d 1250, 1254 (10th Cir. 2003).  Plaintiff's allegation in ground one of the Complaint that he was denied his right to freely exercise his Islamic religion does not allege any facts from which to determine the constitutional significance of this conclusory allegation.  Further, there is no record of an administrative grievance that would elucidate the factual basis for this alleged constitutional violation.  Accordingly, Plaintiff has failed to state a claim for relief with respect to his vague and conclusory allegation of a denial of his right to freely exercise his chosen religion during his confinement at LCF.

Plaintiff also alleges in conclusory terms in ground one of the Complaint that he was subjected to harassment and racially-motivated discrimination by Defendant Barnard.  The only specific factual support for Plaintiff's claim that he was treated differently than other

inmates based on his race is the allegation made in his responsive pleading that his cell was searched several times and, despite the fact that no contraband was found, he was placed in the disciplinary segregation unit without any reason for this placement. Plaintiff refers to his attachment labeled D-1 to support this allegation. This attachment is a copy of a request to staff form authored by Plaintiff, directed to LCF Warden Miller, and dated December 30, 2003, in which Plaintiff alleges he is being "discriminated against" because he was "placed on this lock-down unit pod on date 10-15-03" and he had "received no paper works notifying or acknowledging to me the reason(s) of why I was placed on C-pod." In response to this request to staff, the warden advised Plaintiff that he was given a classification committee hearing about his action that caused his placement into unit 4-C.

It is well settled that placing an inmate in disciplinary segregation generally does not deprive the inmate of a constitutionally- protected liberty interest where the placement does not inevitably affect the duration of the prisoner's sentence. Sandin v. Conner, 515 U.S. 472 (1995); Meachum v. Fano, 427 U.S. 215 (1976). Moreover, "prisoners have no legitimate expectation of privacy" in their prison cells, although the Eighth Amendment's "cruel and unusual punishments clause" protects inmates from cell searches that are the result of "calculated harassment unrelated to prison needs." Hudson v. Palmer, 468 U.S. 517, 530 (1984). Plaintiff's documentary evidence presented to support his claim of racially-motivated and retaliatory actions by Defendant Barnard does not support his claim. Rather, the response to his request to staff informs Plaintiff that the classification decision was made by a classification committee and that Plaintiff was advised by the committee that his own

"actions" caused his placement into the disciplinary segregation unit at LCF.  Plaintiff has failed to state a claim for relief under the due process or equal protection clauses with respect to the allegations in ground one of the Complaint against Defendant Barnard.

IV. <u>Failure to Exhaust Administrative Remedies</u>

In ground one of the Complaint, Plaintiff alleges a denial of his first amendment right to freely exercise his chosen Islamic religion and that he was subjected to harassment and racially-motivated discrimination from Defendant Barnard.  Plaintiff also alleges in ground one of the Complaint that Defendant Barnard denied him "the constitutional right to receive proper exercises." This latter allegation is construed as a claim of unconstitutional conditions of Plaintiff's confinement at LCF with respect to the provision of opportunities for physical exercise.  Defendants have moved to dismiss the claims asserted in ground one on the basis that Plaintiff has failed to exhaust available administrative remedies with respect to these claims.

DOC's established administrative grievance policy provides inmates with a three-step procedure for grieving their complaints.  Defendant Barnard and Dornewass's Motion to Dismiss, Ex. 1 (DOC policy OP-090124, "Inmate/Offender Grievance Process").  This administrative grievance policy applies to all Oklahoma inmates, including those inmates confined to privately-operated facilities. <u>Id.</u> "Under the applicable policy, Oklahoma inmates like [Plaintiff] must engage in a three-step process to exhaust their administrative remedies: an informal attempt at resolution at the unit staff level, submission of a grievance to the reviewing authority, and appeal of an adverse determination to the Oklahoma Department

10

of Corrections." Brewer v. Mullin, No. 04-7407, 2005 WL 958495 (10th Cir. Apr. 27, 2005)(unpublished op.).

Plaintiff submitted a request to staff form dated December 17, 2003, to Defendant Barnard stating that "[s]ince arriving at [LCF] on date 7-15-03 ... I have been denied the practise [sic] of my religion, the opportunity to make progress in my rehabilitation and the constitutional rights of exercising outside for 60 minutes each period five times each week." Plaintiff's Motion to Strike/Dismiss, Ex. B. Defendant Barnard responded to this request to staff, advising Plaintiff that he had spoken to Lieutenant Tipp and Sargeant Nurfur and that Plaintiff would be given the opportunity for recreation and asking Plaintiff to resubmit his request to staff to identify how he believes he has been denied the right to practice his religion. Id. There is nothing in the record showing that Plaintiff submitted another request to staff form with respect to his complaint of an inability to adequately practice his chosen religion.

With respect to Plaintiff's complaint of denial of adequate opportunity for exercise, Plaintiff submitted a grievance to LCF Warden Miller dated December 31, 2003, in which Plaintiff stated that "I've been denied my constitutional right to exercise for 60 minutes each period, five times per week....I have been keeping a daily chart of our exercises. For this month of December we have been denied exercises for 26 days and only allowed exercises for 5 days of this month of December." Id. As relief for this grievance, Plaintiff requested "to be exercised five times per week, sixty minutes each period." Id. The LCF grievance coordinator returned the grievance to Plaintiff with a notation indicating that Plaintiff failed

11

to attach the request to staff form showing he had completed the first step of the administrative grievance procedure requiring him to attempt informal action concerning his grievance. The response also advised Plaintiff that he had ten calendar days to properly submit a grievance to correct this procedural deficiency. Id. There is nothing in the record showing that Plaintiff submitted another grievance on the issue of exercise.

With respect to Plaintiff's vague allegations of harassment and discrimination in ground one of the Complaint, Plaintiff has produced a request to staff form dated December 13, 2003, in which he asserts in the same vague language that LCF staff generally exhibited "constant discrimination against Black Inmates." The only specific allegations contained in this request to staff form are that "Black Inmates" are not being given the opportunity to be placed on a higher classification level or place new visitors on their phone and visitation lists after 30 days from the date of a finding of guilt of a misconduct whereas "White Inmates" are allowed these privileges. Plaintiff's Motion to Dismiss/Strike, Ex. C-1. In response to this request to staff, Plaintiff was advised that his interpretation of the institution's policy was incorrect and that inmates do not have the right to be promoted to a higher classification level 30 days after receiving a misconduct, that this decision is a discretionary decision made by the inmate's unit team, and that the number of Black inmates on classification level two was higher than Plaintiff alleged. Id. There is no record of Plaintiff ever submitting a grievance with respect to this issue of racially-motivated discrimination by LCF staff. Plaintiff submitted another request to staff form dated December 31, 2003, in which Plaintiff alleged Defendant Barnard had shown "vindictiveness" and "racially motivated" actions toward

Plaintiff and had "placed [Plaintiff's] life in serious danger by making false allegations that I was a police." Plaintiff's Motion to Dismiss/Strike, Ex. C-2. The response to this request to staff form indicates Plaintiff was advised that his recollection of this conversation was not consistent with that of the involved witnesses. Id. Plaintiff submitted other request to staff forms generally alleging "constant racial discrimination" toward him committed by Defendant Barnard and other LCF officials. In response, Plaintiff was advised to clarify his allegations and provide specific instances of discriminatory actions before a review could be conducted. Plaintiff's Motion to Strike/Dismiss, Ex. C-3. Plaintiff submitted one request to staff form on December 30, 2003, alleging that Defendant Barnard and "Mr. Tipp" had shown "racism against Black Inmates" and that he was being "discriminated against" because he had been placed in a segregation unit within the protective custody unit of LCF on October 15, 2003. Plaintiff's Motion to Strike/Dismiss, Ex. D-1. There is no record that Plaintiff ever submitted a grievance with respect to the racially-discriminatory actions by LCF staff he alleges in ground one of the Complaint.

Plaintiff did not complete the available administrative remedy procedure with respect to his claims in ground one of deprivation of his First Amendment right to freely exercise his religion, of deprivation of adequate opportunity to exercise, and of racially-motivated discriminatory actions by LCF staff toward Plaintiff. "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the Prison Litigation Reform Act] for failure to exhaust his administrative remedies." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002). Plaintiff has failed to exhaust all three

administrative steps of the established remedial process, and his failure to exhaust available administrative remedies with respect to the claims asserted in ground one of the Complaint requires the dismissal of the entire cause of action without prejudice. See Ross v. County of Bernalillo, 365 1181, 1189 (10th Cir. 2004)(finding the PLRA contains a total exhaustion requirement and the presence of unexhausted claims in a complaint requires dismissal of the complaint without prejudice).

Although it is not necessary to review the issue of Plaintiff's exhaustion of administrative remedies with respect to grounds two and three of the Complaint, the record reflects that Plaintiff submitted a grievance to LCF Warden Miller in November 2003, in which Plaintiff states that Defendant "Champion has wrongly denied me the return of my stolen radio. My radio was stolen on date 10/13/03, and I immediately contacted unit manager on several occasions." Supplement to Special Report, Ex. 7. In response, the LCF grievance coordinator returned the grievance to Plaintiff because he failed to include documentation reflecting that his informal request directed to LCF unit manager Barnard was answered. Id. Plaintiff was specifically advised that he needed to re-submit his grievance to correct this deficiency and that pursuant to the DOC grievance policy Plaintiff had ten calendar days to properly submit another grievance. Id. There is nothing in the record showing that Plaintiff submitted another grievance concerning the issue of his "stolen radio." Thus, Plaintiff also failed to exhaust available administrative remedies with respect to the issue he raises in ground two of the Complaint. Nor has Plaintiff demonstrated that he ever sought administrative relief concerning the issue he raises in ground three of the Complaint

with respect to his initial classification to the protective custody unit at LCF.[1]

## RECOMMENDATION

Based on the foregoing findings, it is recommended that Defendants Barnard and Dornewass's Motion to Dismiss (Doc. # 23) and Defendant Champion's Motion to Dismiss (Doc. # 48) be GRANTED and that Plaintiff's cause of action be dismissed without prejudice for (1) failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A and § 1915(e)(2)(B) with respect to Plaintiff's claims in ground one of denial of his right to freely exercise his chosen religion and harassment and racially-motivated discrimination by Defendant Barnard and (2) failure to exhaust administrative remedies with respect to all of the claims urged in the Complaint. To the extent Plaintiff seeks summary judgment in his pleading entitled Motion for Default Judgment/Motion for Summary Judgement (Doc. #42), said Motion should be DENIED. Plaintiff is notified that a dismissal of this cause of action pursuant to 28 U.S.C. §1915A or §1915(e)(2)(B) constitutes one "strike" pursuant to 28 U.S.C. §1915(g). Plaintiff is advised of his right to file an objection to this Second Supplemental Report and Recommendation with the Clerk of this Court by <u>December 7  </u>, 2005, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The Plaintiff is further advised that failure to make timely objection to this Second Supplemental Report and Recommendation waives his right to appellate review of both factual and legal issues

---

[1] Plaintiff complains only that he was unfairly placed in "Housing Block 400" against his will and without a proper hearing. However, LCF records reflect that Plaintiff was classified as being in need of protective custody when he arrived at LCF, and he was placed in the protective custody unit of LCF where he remained throughout his confinement at LCF. Supplement to Special Report, Ex. 10.

contained herein. <u>Moore v. United States of America</u>, 950 F.2d 656 (10th Cir. 1991).

    This Second Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

    ENTERED this   17th   day of   November  , 2005.

*[Signature]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE